199 S.W.3d 581 (2006)
Melvin KETCHUM, Appellant,
v.
The STATE of Texas, Appellee.
No. 13-05-622-CR.
Court of Appeals of Texas, Corpus Christi-Edinburg.
August 10, 2006.
*586 Virginia Koblizek Burt, Corpus Christi, for appellant.
Douglas K. Norman, Asst. Dist. Atty., Carlos Valdez, Nueces County Dist. Atty., Corpus Christi, for state.
Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

OPINION
Opinion by Justice CASTILLO.
The indictment charged appellant Melvin Ketchum with two counts of aggravated sexual assault of a child, with an enhancement paragraph for a prior felony sexual assault conviction.[1] A jury returned a guilty verdict on both counts and the trial court assessed punishment for each count at life imprisonment. Ketchum presents five points of error on appeal. We affirm.

I. BACKGROUND
Catherine Abernethy, school counselor, was alerted by a student that another student had been "hurt" by an adult. After calling in C.M., the alleged victim, she learned that the minor girl had been sexually assaulted two years prior by a male neighbor, Melvin Ketchum, when the girl was nine years of age. Abernethy contacted the principal of the school, who alerted officials. Constable Zenner took the report and contacted the victim's father. Appointments were made for the victim at Driscoll Children's Hospital and the Children's Advocacy Center. At the hospital, sexual assault nurse examiner Carol McLaughlin examined the victim and found no physical evidence, which she testified was to be expected as it had been two years since the incident. At the Children's Advocacy Center, Ricardo Jimenez, a Nueces County forensic interviewer, conducted a video interview with the victim. The videotape was admitted in evidence.
The victim stated that on or about June 25, 2003, she and her younger brother stayed at Ketchum's house for the night while their dad went out with friends. Around two o'clock in the morning, she and her brother were awakened by Ketchum and his wife, Cena O'Brien (O'Brien testified that neither the victim nor her *587 brother had ever stayed the night with them). Ketchum asked them if they wanted to go fishing. The brother said yes and the victim claims she also went because she did not want to leave her brother alone. Once at the pier, Ketchum left the victim's brother with a family who were fishing. He then took the victim back to the car, telling her that "little girls need to take naps." Once they were both inside the car, he locked the doors and engaged in sexual conduct by digital penetration and contact of sexual organs. The next day the victim told her father she was bleeding from her private area. He said he asked Terry Yeager, the landlord of their trailer park, for help as he thought the child was starting her first menstrual cycle. Yeager thought it was odd that the victim was starting her menstrual cycle at age nine, but took the victim to get pads without asking questions. The bleeding lasted a day or two, however it was determined not to be a menstrual cycle. Nurse McLaughlin supported that fact with the finding that the victim was still prepubescent at the time of the examination, two years post-offense.
While waiting for trial, Ketchum discussed his case with a fellow inmate, Mickey Wayne Boswell, who then testified against him in court. Boswell stated Ketchum admitted that he did sexually assault the victim and would have penetrated her with his sexual organ but could not.

II. ISSUES PRESENTED
Ketchum asserts five points of error. In his first point, Ketchum argues that the trial court violated his due process right to notice under the sixth and fourteenth amendments of the United States Constitution when it allowed the State to present enhancement evidence, over Ketchum's objection of untimely notice, of the State's intent to offer enhancement evidence. In his second point of error, Ketchum asserts that the evidence was factually insufficient to support the verdict. In his third point of error, Ketchum maintains that the trial court erred in denying his motion for mistrial after a State's witness provided unsolicited extraneous offense evidence of a pistol underneath the backseat of Ketchum's car at the time of the offense. In his fourth point of error, Ketchum complains of ineffective assistance of counsel based on a cumulation of multiple errors at trial. In his fifth point of error, Ketchum argues that the trial court erred in denying a mistrial based on prosecutorial misconduct which permitted the prosecutor to inject his opinion as to Ketchum's guilt.

III. FACTUAL SUFFICIENCY
In his second point of error, Ketchum argues that evidence presented at trial was factually insufficient to support the verdict. Specifically, he argues that the date of the offense was never proven beyond a reasonable doubt, and the proof of guilt based on the victim's testimony was so weak as to undermine confidence in the jury's determination that all of the elements of the offenses were proven. The State responds that the evidence was factually sufficient to support the verdict, and that Ketchum's challenge as to the date of the incident holds no merit because the date alleged is simply to satisfy the statute of limitations requirement. The State also responds that there is additional corroboration to the child victim's testimony, including Ketchum's confession to a fellow inmate, to satisfy the beyond-a-reasonable-doubt standard.

A. Standard of Review
In a factual sufficiency review, we view all the evidence in a neutral light and set aside the verdict if "proof of guilt is so obviously weak as to undermine confidence *588 in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex.Crim.App.2005) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000)); Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex.Crim.App.2003).
There are two ways in which the evidence may be insufficient. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Id. at 484-85. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. Id. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Id.
In conducting our review, we consider all of the evidence weighed by the jury, comparing the evidence which tends to prove the existence of the elemental fact in dispute to the evidence which tends to disprove it. Johnson, 23 S.W.3d at 6-7 (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.1996)). We are authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, but we must avoid substituting our judgment for that of the fact-finder. Santellan v. State, 939 S.W.2d 155, 164 (Tex.Crim.App.1997) (en banc).
In conducting a factual-sufficiency review in an opinion, we "show our work" when we consider and address the appellant's main argument for urging insufficiency of the evidence. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.2003); Johnson, 23 S.W.3d at 9; Manning v. State, 112 S.W.3d 740, 747 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); see Tex.R.App. P. 47.1. This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. Sims, 99 S.W.3d at 603; Manning, 112 S.W.3d at 747.
We measure sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.1997); Adi v. State, 94 S.W.3d 124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd). This standard ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted. Malik, 953 S.W.2d at 240. We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense. Malik, 953 S.W.2d at 240.

B. Elements of the Offenses
As to Count One, the State must prove beyond a reasonable doubt that (1) on or about June 25, 2003, (2) Ketchum intentionally *589 or knowingly (3) caused the sexual organ of the victim to contact his sexual organ and (4) the victim was a child younger than fourteen years of age and not married to the Ketchum. See Tex. Pen. Code Ann. §§ 22.011(c)(1), 22.021(a)(1)(B)(iii) (Vernon 2005); Adi, 94 S.W.3d at 131.
Similarly, as to Count Two, the State must prove beyond a reasonable doubt that (1) on or about June 25, 2003, (2) Ketchum intentionally or knowingly (3) caused digital penetration of the victim's sexual organ, and (4) the victim was a child younger than fourteen years of age and not married to Ketchum. See Tex. Pen. Code Ann. §§ 22.011(c)(1), 22.021(a)(1)(B)(iii); Adi 94 S.W.3d at 131.

C. Application to Counts One and Two of the Indictment
The victim testified that, on or about June 25, 2003, Ketchum awakened the victim and her brother at approximately two o'clock in the morning and took them to a pier to fish. At some point that night, Ketchum left the brother with a family at the pier and took the victim back to the car, telling her "little girls need to take naps." The victim testified that, once in the car, Ketchum locked the doors, ordered her to assume a sexual position, and engaged in sexual contact by his sexual organ and by digital penetration.

1. The Date of the Offense
Ketchum argues that the State never proved the first element, the date of the offense, beyond a reasonable doubt.[3] However, unless the date is a material element of an offense, it is not necessary for an indictment to specify the precise date on which the charged offense occurred. See Garcia v. State, 981 S.W.2d 683, 685-86 (Tex.Crim.App.1998) (en banc). The primary purpose of specifying a date in the indictment is not to notify the accused of the date of the offense. Id. at 686. Rather, the purpose of providing a date is to show that the prosecution is not barred by the statute of limitation. Id.
When an indictment alleges that a crime occurred "on or about" a certain date, the State may prove an offense "with a date other than the one specifically alleged so long as the date is anterior to the presentment of the indictment and within the statutory limitation period and the offense relied upon otherwise meets the description of the offense contained in the indictment." Yzaguirre v. State, 957 S.W.2d 38, 39 (Tex.Crim.App.1997) (en banc) (quoting Sledge v. State, 953 S.W.2d 253, 256-57 (Tex.Crim.App.1997) (en banc)). The statutory period of limitation for indecency with a child is ten years from the child's eighteenth birthday. Tex. Code Crim. Proc. Ann. art. 12.01(5)(A) (Vernon 2005). Thus, the hypothetically correct jury charge in this case would instruct the jury that the State could prove that the charged offenses were committed before, on, or after the dates alleged in the indictment so long as the dates were before the date of the indictment and within the applicable limitation period. Mireles v. State, 901 S.W.2d 458, 459 (Tex.Crim. App.1995) (en banc).
In this case, the superceding indictment was filed on August 18, 2005, and alleged the offense occurred on or about June 25, 2003. The victim's testimony that the assaults occurred in 2003 places the date of the offenses well within the applicable ten-year limitation. Mireles, 901 S.W.2d at 459.
*590 As contrary evidence, Ketchum points to the testimony of Cena O'Brien, his common law wife. O'Brien testified that the victim never spent the night at the Ketchum residence. Ketchum also points to the testimony of other State witnesses who testified as to events in 2004 rather than in 2003. He argues that the victim did not outcry until she was eleven years of age. Within those two years, she continued to live in the same trailer park as Ketchum and played with his two sons. Ketchum challenges the victim's testimony that she did not tell her father about the incident because she was afraid of what he would do to Ketchum. However, the victim also testified that whenever Ketchum came by her home, she would climb a tree so no one could reach her. Further, the jury heard expert testimony that many times child abuse victims do not outcry right away for various reasons including fear and shame.
We remain mindful of the jury's role to resolve conflicts in testimony. See Mosley v. State, 983 S.W.2d 249, 254 (Tex.Crim. App.1998) (en banc) (questions concerning the credibility of the witnesses and the weight to be given their testimony are to be resolved by the trier of fact); Esquivel v. State, 506 S.W.2d 613, 615 (Tex.Crim. App.1974). The jury as the fact finder could have disbelieved all the witnesses or any of them, and was free to reject their testimony. Mosley, 983 S.W.2d at 254; Esquivel, 506 S.W.2d at 615. We must assume that the fact finder resolved conflicts, including conflicting inferences, in favor of the verdict and must defer to that resolution. Matchett v. State, 941 S.W.2d 922, 936 (Tex.Crim.App.1996) (en banc). Based on its resolution of the facts and credibility determinations, the jury implicitly rejected evidence Ketchum considers favorable to his defense. We conclude that evidence of the date of the offense is factually sufficient.

2. The Remaining Essential Elements
The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. See Tex.Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); Garcia v. State, 563 S.W.2d 925, 928 (Tex.Crim.App.1978). Courts give wide latitude to testimony given by child victims of sexual abuse. See Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim.App.1990) (en banc). The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult. See id.
In this case, the victim testified that Ketchum left the victim's brother at the pier and took her to go to the car with him under the pretext that she must take a nap. The victim graphically described the incidents of sexual contact and conduct that occurred while alone with Ketchum in the locked car. The jury heard that the victim bled the day after the incident and was prepubescent at the time of trial. Although Ketchum argues there is no medical record of the bleeding, there is no requirement that the victim's testimony be corroborated by medical or physical evidence. Garcia, 563 S.W.2d at 928; Kemple v. State, 725 S.W.2d 483, 485 (Tex. App.-Corpus Christi 1987, pet. ref'd, untimely filed). The jury heard that Ketchum admitted the offenses to jail inmate Boswell. The jury also heard that the victim was under fourteen years of age and not married to Ketchum at the time of the incident.

D. Disposition
Favoring neither the prosecution nor the defense, and with appropriate deference to the jury's credibility determinations, we conclude that the evidence supporting the verdict is not too weak to support the *591 jury's finding of guilt beyond a reasonable doubt. Zuniga, 144 S.W.3d at 484-85; Esquivel, 506 S.W.2d at 615. Nor is the weight of the evidence contrary to the verdict strong enough that the State could not have met its burden of proof. Zuniga, 144 S.W.3d at 484-85. We conclude that the evidence is sufficient for a rational trier of fact to conclude there was contact with and penetration of the victim's sexual organ as alleged in Counts One and Two of the indictment as measured against the hypothetically correct jury charge. Tex. Pen.Code Ann. §§ 22.011(c)(1), 22.021(a)(1)(B)(iii); Adi, 94 S.W.3d at 131.
Accordingly, we overrule Ketchum's second point of error.

IV. NOTICE OF ENHANCEMENT IN SUPERCEDING INDICTMENT
By his first point of error, Ketchum asserts that the trial court violated his due process rights by (1) enhancing punishment even though the State failed to provide timely notice that it would seek the enhancement, and (2) admitting enhancement evidence. The State responds that Ketchum did not preserve error and, in any event, Ketchum had timely notice of the enhancement allegation.

A. The Record
The record shows that Ketchum was arrested on March 10, 2005. The original indictment, dated April 21, 2005, alleged two counts of sexual conduct with a child. A re-indictment, dated May 26, 2005, added an enhancement paragraph that alleged Ketchum was previously convicted of felony sexual assault in Harris County. A final re-indictment, dated August 18, 2005, changed the date of the substantive offense in each count from June 25, 2004, to June 25, 2003.
During pre-trial proceedings on August 22, 2005, the prosecutor stated that punishment was not an issue because Ketchum was facing an automatic life sentence. Defense counsel alleged that the State did not meet the statutory notice requirements with respect to the enhancement paragraph. Defense counsel stated that neither he nor Ketchum received the May 26, 2005, superceding indictment, and that they did not receive the August 18, 2005, re-indictment until August 22, 2005. Defense counsel stated, "I am not going to say that we weren't aware that he had been convicted but for official notice of the enhancement, we just received that today on the [current indictment]." The prosecutor responded that she provided verbal notice on different occasions, including once to Ketchum personally. Further, Ketchum had requested appointment of co-counsel because he was facing an automatic life sentence. Before trial on the merits commenced, the following colloquy between Ketchum and his counsel occurred:
Defense Counsel: [Ketchum], you understand if convicted of this offense that the sentence is automatic life in prison?
[Ketchum]: Yes, sir.
The trial court verbally ruled, "There is no question they had notice." Defense counsel requested the trial court dismiss the enhancement if it found there was no arraignment on the August 22, 2005, indictment. The trial court ruled that it would reset the case to comply the statutory ten-day notice requirement if Ketchum requested the extension. The trial court denied the request to strike the enhancement paragraph. After conferring with Ketchum, defense counsel announced that Ketchum waived his ten-day notice. The trial court then re-arraigned Ketchum with respect to the new indictment. The following ensued:
The Court: Have you received a copy of the superseding indictment? We are *592 now on our third indictment. Have you had that for 10 days?
[Ketchum]: No, he [sic] hasn't.
The Court: Do you waive the ten-day notice period?
[Ketchum]: Yes.
Trial commenced. After the jury returned the guilty verdict, which the trial court accepted, defense counsel renewed the objection as to lack of timely notice of the enhancement paragraph. Defense counsel stated that the waiver of the ten-day notice period applied only to proceeding to trial. The trial court overruled the objection. Ketchum pled true to the enhancement paragraph. When the State offered the penitentiary packet in evidence, defense counsel stated, "No objections." The penitentiary pack was admitted in evidence. Finding the enhancement paragraph true, the trial court pronounced punishment at life imprisonment for each count and ordered the sentences to run concurrently.

B. Timely Notice of the Enhancement Allegation
The accused is entitled to a description of the judgment of any former convictions that will enable him to find the record and make preparation for a trial on the question of whether he is the named convict therein. Villescas v. State, 189 S.W.3d 290, 293 n. 14 (Tex.Crim.App.2006) (quoting Morman v. State, 127 Tex.Crim. 264, 75 S.W.2d 886, 887 (1934)); see Coleman v. State, 577 S.W.2d 486, 488 (Tex. Crim.App.1979) (holding that the purpose of an enhancement allegation is to provide the accused with notice of the prior conviction relied upon by the State). The State must plead in some form any enhancement allegations which it intends to prove during the punishment phase of trial. Hackett v. State, 160 S.W.3d 588, 590 (Tex.App.-Waco 2005, pet. ref'd) (en banc) (citing Brooks v. State, 957 S.W.2d 30, 33-34 (Tex. Crim.App.1997)). Proper notice of intent to enhance punishment must be given in a timely manner, but it need not be pled in the indictment itself to be considered proper notice, so long as it is pled "in some form." Brooks, 957 S.W.2d at 33. With respect to the timeliness of the notice, the Texas Court of Criminal Appeals has recently held that the Brooks notice requirement is of constitutional origin and that the ultimate question is whether constitutionally adequate notice was given. Villescas, 189 S.W.3d at 294. Thus, for due process purposes, the determination of whether proper notice was given does not require that the notice be given within a particular time period either before trial or even before the guilt phase of trial. Id. The ultimate question is whether constitutionally adequate notice was given. Id. Due process does not require that the notice be given before the guilt phase begins, much less that it be given a number days before trial. Id. When the accused has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies due process. See id. The trial court may cure the notice problem by granting a continuance. Id.

C. Application
In determining whether Ketchum was provided sufficient notice of the State's intent to enhance punishment, we observe the record does not suggest Ketchum's defense was in any way impaired by the timing of the State's enhancement notice. Ketchum did not claim that he was unprepared to defend against the prior conviction, and defense counsel affirmatively stated he was aware of the prior conviction. Further, Ketchum testified he knew he was facing an automatic life sentence if convicted. Ketchum expressly waived additional time to prepare in response *593 to the trial court's inquiry before trial. He expressly declined the trial court's offer to grant a continuance if requested. Ketchum pled true to the enhancement paragraph, did not object to the evidence admitted to support it, and had no defense against it.
After considering these facts and circumstances, we conclude that Ketchum did not preserve error. See Martinez v. State, 91 S.W.3d 331, 336-37 (Tex. Crim.App.2002) (holding that an accused must advance his complaints at a time when there is an opportunity to respond to them or cure them and we may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case but was not raised). Even assuming he preserved error, Ketchum did not state that a continuance was necessary to discover or prepare a defense and, accordingly, he received the notice minimally required to satisfy due process. See Villescas, 189 S.W.3d at 294. Further, even assuming the State failed to give adequate notice of its intent to use the prior convictions for enhancement purposes, any error was rendered harmless because Ketchum did not request a continuance. See Tex. R.App. P. 44.2(a).
Moreover, Ketchum did not preserve error as to enhancement evidence when he failed to object to the penitentiary packet. "All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." Keeter v. State, 175 S.W.3d 756, 760 (Tex.Crim.App.2005) (en banc) (quoting Lankston v. State, 827 S.W.2d 907, 909 (Tex.Crim.App.1992)); Martinez, 91 S.W.3d at 336. Thus, even assuming Ketchum did not have adequate notice of punishment enhancement, he did not object to the evidence proffered to support the enhancement. Accordingly, we cannot conclude beyond a reasonable doubt that error contributed to the punishment assessed. See Tex.R.App. P. 44.2(a).
We overrule Ketchum's first point of error presented.

V. EXTRANEOUS OFFENSE EVIDENCE
By his third point of error, Ketchum asserts that the trial court erred in denying his motion for mistrial after the victim's father provided unsolicited testimony that the victim saw a pistol in Ketchum's car. Ketchum maintains that the witness divulged an inadmissible extraneous bad act. The State concedes that a person commits an offense if he carries a handgun on his person[4] but counters that evidence of a pistol out of Ketchum's reach is not evidence of an extraneous offense. The State further responds that Ketchum has not shown harm.
Assuming without deciding that Ketchum has shown error, he is not entitled to reversal unless he shows that the error was (1) of constitutional magnitude, or (2) affected a substantial right. See Tex.R.App. P. 44.2(a), (b). A violation of rules of evidence that results in erroneous admission of evidence is non-constitutional error under rule 44.2(b). Reyes v. State, 69 S.W.3d 725, 742 (Tex.App.-Corpus Christi 2002, pet. ref'd); Couchman v. State, 3 S.W.3d 155, 160 (Tex.App.-Fort Worth 1999, pet. ref'd).
*594 In this case, the offending statement occurred during the culpability phase of the trial. The charged offenses involved two counts of sexual contact with a child. The record does not demonstrate that the weapon was an instrumentality of the offense or that the testifying witness made the statement to inflame the minds of the jury. The unchallenged evidence in this case permitted the jury to find all of the elements of the charged offenses. Indeed, nothing suggests the jury would have come back with a different verdict without the unsolicited evidence of a pistol in the rear area of the vehicle. We conclude that Ketchum was not harmed by the admission of the complained-of statement during the guilt-innocence phase of the trial. See Tex.R.App. P. 44.2(b).
Moreover, even assuming harm, a prompt instruction to disregard generally cures the prejudicial effect of effect of improper testimony, even that regarding an extraneous offense. See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim.App.2000) (per curiam); Hackett, 160 S.W.3d at 592. An instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred.[5]Young v. State, 137 S.W.3d 65, 69 (Tex.Crim.App.2004) (en banc). Where the prejudice is curable, an instruction eliminates the need for a mistrial. Id. In this case, the trial court instructed the jury to disregard the complained-of testimony, at Ketchum's request, before the witness testified further. The instruction was prompt. We conclude that the trial court's instruction cured any prejudice.[6]Ovalle, 13 S.W.3d at 784; Hackett, 160 S.W.3d at 592. Ketchum moved for a mistrial which the trial court denied. Because the prejudice was cured, a mistrial was unnecessary. See Young, 137 S.W.3d at 69.
We overrule Ketchum's third point of error presented.

VI. EFFECTIVE ASSISTANCE OF COUNSEL
By his fourth point of error, Ketchum asserts that his two trial counsel were ineffective because, in particular, trial counsel failed to (1) object during the prosecutor's opening statement, (2) object to opinion testimony of an outcry witness, (3) call his mother to testify, and (4) prevent disclosure of Ketchum's alibi defense. The State responds that the record does not demonstrate ineffectiveness of counsel or harm.

A. Standard of Review
To establish ineffective assistance of counsel, Ketchum must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but *595 for counsel's deficiency, the result of the trial would have been different.[7]Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex.Crim. App.2005); Thompson v. State, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). The failure to satisfy one prong of the Strickland test negates a court's need to consider the other. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052.
Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. Robertson v. State, 187 S.W.3d 475, 483 (Tex.Crim.App.2006) (quoting McFarland v. State, 845 S.W.2d 824, 843 (Tex.Crim.App.1992)). Counsel's performance is judged by "the totality of the representation" and, "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. Id. (quoting Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App.1984)). The Supreme Court in Strickland cautioned that intrusive post-trial inquiry into attorney performance should be avoided because that would encourage the proliferation of ineffectiveness challenges. Id. (citing Strickland, 466 U.S. at 690, 104 S.Ct. 2052).

B. The Motion for New Trial Record
Ketchum timely filed a motion for new trial. In the motion he asserted that he was denied effective assistance of counsel because counsel failed to (1) properly investigate the case before trial, (2) exercise due diligence to obtain exculpatory information from witnesses not called to testify, and (3) prevent pretrial disclosure of his alibi defense. The trial court convened a hearing on Ketchum's motion. Ketchum and one of his two trial attorneys testified.

1. Failure to Call a Witness to Testify
Ketchum testified that trial counsel failed to call Ketchum's mother to testify. His mother lived with him throughout 2003, the year of the alleged offense. Ostensibly, she would have testified that the victim did not spend the night at Ketchum's residence.

2. Pretrial Disclosure of Alibi Evidence
Ketchum maintained that the superceding indictment changed the date of the offense after he and his trial counsel met with the prosecutor and provided an alibi for the date contained in the original indictment. The record shows that the superceding indictment alleged the offense *596 occurred in 2003, instead of the original alleged date in 2004. Ketchum testified on direct examination as follows:
Q. Whose idea was that to proceed with telling a prosecutor your alibis before trial? Yours or your lawyers?
A. My lawyer's [sic] at first.
Q. Did you agree with him to do that?
A. Yes, because it would be thrown out. If it wasn't, he was going to her boss and have it thrown out.

3. Trial Counsel's Testimony
The State called one of Ketchum's trial counsel to testify. Trial counsel stated that the main defense was to emphasize inconsistencies in the victim's various statements as to the offense and inconsistencies as to the date of the offense. With respect to the date of the offense, trial counsel explained that the testifying adults were "adamant" that the offense occurred in 2004 and not in 2003, as alleged in the superceding indictment. Counsel further testified that providing alibi evidence to the prosecutor was Ketchum's idea because, by then, Ketchum had already admitted to Boswell, his jail inmate and a testifying witness, that Ketchum had committed the offense. Further, by the time trial counsel and Ketchum met with the prosecutor, the prosecutor had the alibi evidence with respect to Ketchum's whereabouts on the date alleged in the original indictment. While meeting with the prosecutor, Ketchum essentially focused on discrediting Boswell. Finally, trial counsel testified that Ketchum's discussion of the case with Boswell was against the advice of counsel.
At the conclusion of the testimony, the trial court denied the motion for new trial.

C. The Trial Record

1. Improper Opening Statement and Jury Argument
In his appellate brief, Ketchum asserts that his trial counsel failed to object to the prosecutor's improper opening statement wherein the prosecutor mentioned Mickey Boswell. A review of the record reveals the following statements made by the prosecutor:
[Inmate Mickey Boswell] wants to come forward because he does not want this man to get away with raping an eight  just turned nine year old little girl. He is going to tell you what this defendant told him about the rape of the victim, how this defendant called the little girl [expletives omitted]. Then he said he could have [graphic description omitted], that he did touch her and do things to her but that he thought he was going to get away with it. But Mr. Boswell will come in and tell you exactly what [Ketchum] said because he wants to do the right thing here and he wants to help this little girl so that she is not having to testify all by herself what [Ketchum] did to her.
Before the foregoing statement, the prosecutor stated that Boswell was "coming forward on his own volition. . . . He also is a sex offender. He has been to prison for raping a girl, consensual, when she was 15 years old."
Ketchum maintains that the prejudice resulting from his trial counsels' failure to object to the opening statement was augmented by the prosecutor's jury argument regarding Boswell's credibility. Ketchum characterizes the prosecutor's jury argument as a personal opinion that Boswell was a more trustworthy child molester because Boswell's victim was older than Ketchum's victim. Ketchum concedes that trial counsel objected to the prosecutor's *597 closing argument and the objection was overruled.

2. Improper Opinion Testimony as to C.M.'s Credibility
Ketchum maintains that his trial counsel did not object when the school counselor testified and made an improper comment as to the victim's credibility. The school counselor was an outcry witness. Ketchum complains of the following response during direct examination:
[Prosecutor]: Did you feel like she was acting telling you this?
[Counselor]: No. I felt she was very genuine. Her effect, the trembling, the crying, it was very, very difficult for her.
We turn to the application of the law to the facts in the record.

D. Application
There is no requirement that we approach the two-pronged inquiry of Strickland in any particular order, or even address both components of the inquiry if the defendant makes an insufficient showing on one component. Strickland, 466 U.S. at 697, 104 S.Ct. 2052. Thus, we turn to the record evidence to determine whether Ketchum has met his burden to prove ineffective assistance of counsel. See id.
Initially, we note that the record in this case does not support a finding that Ketchum's trial lawyers disclosed his alibi evidence. Rather, the disclosure was Ketchum's idea to counter Ketchum's confession to Boswell. Further, the prosecutor already had the alibi evidence and Boswell's statement at the time the parties met.
Similarly, the record does not support a finding that Ketchum apprised trial counsel that Ketchum's mother was available and that Ketchum would benefit from her testimony. See Holland v. State, 761 S.W.2d 307, 319 (Tex.Crim.App.1988) ("Absent a showing by appellant that he would have benefited from the testimony, the decision not to call witnesses at either stage of trial does not raise the spectre of ineffective assistance."). Further, the proffered evidence that the victim did not spend the night at Ketchum's residence was cumulative of comparable testimony already before the jury. See id.
Ketchum bases his two remaining complaints on trial counsels' failure to object to the prosecutor's opening statement and an outcry witness's opinion testimony. Ketchum asserts that the prosecutor's opening statement improperly injected personal opinion regarding Boswell's credibility. He concedes that, even if improper statements were made, he must show reversible error. The State responds that the prosecutor did not say she believed Boswell to be credible. The record does not show that the prosecutor espoused a personal opinion during opening statement. Rather, the prosecutor related the State's facts which she expected to prove in support of the charges against Ketchum. See Tex.Code Crim. Proc. Ann. art. 36.01(a)(3) (Vernon Supp.2005).
The purpose of article 36.01 is to communicate to the jury the party's theory of the case in order to aid the jury to evaluate the evidence as it is being presented. Parra v. State, 935 S.W.2d 862, 871 (Tex. App.-Texarkana 1996, pet. ref'd). The opening statement in a criminal case is an outline of facts which the prosecution in good faith expects to prove. Id. In this case, the prosecutor presented evidence at trial that supported what she said in opening statement.[8]
*598 Ketchum maintains that trial counsel should have objected because the school counselor (an outcry witness) improperly gave her opinion of the victim's credibility. Based on our holding in State v. Cabrera, 24 S.W.3d 528, 531 n. 2 (Tex.App.-Corpus Christi 2000, pet. ref'd), the State concedes error because evidence as to the child victim's truthfulness is inadmissible. However, the State counters that trial counsel effectively exploited the opinion through cross-examination in furtherance of Ketchum's defensive theory. At trial, the counselor conceded that the victim's demeanor at the time she outcried could have been based on other factors. When asked, for example, if the victim could have cried because someone else was the perpetrator who she did not wish to identify, the counselor answered, "Yes."

E. Disposition
We determine counsels' performance by the totality of the representation. See McFarland, 845 S.W.2d at 843. We observe that Ketchum had the opportunity to develop the record with respect to trial counsels' strategy because one of his attorneys testified at the post-trial hearing. However, in his motion for a new trial and at the hearing on the motion, Ketchum did not complain that trial counsel had failed to object to the prosecutor's opening statement and to the counselor's opinion testimony. We conclude that the record does not support his argument. Appellate review of trial counsels' representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. See Bone v. State, 77 S.W.3d 828, 833 (Tex.Crim.App.2002). Thus, we need not speculate about the soundness of the many possible trial strategies counsel may have used. See Jackson, 877 S.W.2d at 771(holding that an appellate court cannot conclude based on speculation that counsel was ineffective when the record does not show counsel's reasons for the decisions made at trial); Delrio v. State, 840 S.W.2d 443, 447 (Tex.Crim.App.1992) (en banc) (per curiam). Because the record does not establish counsel's reasons for failing to object, we cannot conclude counsel exercised other than reasonable professional judgment. Bone, 77 S.W.3d at 833; Jackson, 877 S.W.2d at 771. Accordingly, we conclude that Ketchum has not met the first prong of the Strickland test as to trial counsels' failure to object. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052; Robertson, 187 S.W.3d at 483-84.
With respect to Ketchum's remaining complaints that (1) his alibi defense was improperly disclosed, and (2) his mother was not called to testify, we have already concluded that the record does not demonstrate trial counsel disclosed the alibi defense or knew that Ketchum's mother was available to testify. Thus, Ketchum marshaled no evidence to support his complaint. See Phetvongkham v. State, 841 S.W.2d 928, 932 (Tex.App.-Corpus Christi 1992, pet. ref'd) (citing Johnson v. State, 691 S.W.2d 619, 626 (Tex.Crim.App.1984)) (overruling appellant's contention that counsel was ineffective because no evidence supported this contention). Even *599 assuming error, we cannot conclude that, but for the complained of errors, the result of the trial would have been different. Accordingly, we conclude that Ketchum has not met the second Strickland prong. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052; Jackson, 877 S.W.2d at 771.
We overrule Ketchum's fourth point of error.

VII. MISTRIAL
By his fifth point of error, Ketchum asserts the trial court reversibly erred by denying his motion for mistrial based on the prosecutor's injecting her personal opinion suggesting Ketchum's guilt during cross-examination of Ketchum's wife. The testimony at issue occurred in the context of cross-examination. The prosecutor cross-examined Ketchum's wife as follows:
Q. You are saying that the victim and her brother never stayed at your trailer?
A. Not at night . . . they were at my house during the day, all the time.
Q. But they never slept over for  they never slept over at your house?
A. No, ma'am.
Q. They were awakened at 2 a.m.?
A. No, ma'am.
* * *
Q. And [Ketchum], he did like to fish, didn't he?
A. My husband, that is his great desire to fish.
Q. He would fish at the [pier]?
A. No. He had different spots. He had favorite spots that he went by himself that children would have gotten hurt.
Q. I would have to agree that with him children would get hurt.
Trial counsel objected and requested an instruction to disregard. The trial court sustained the objection stating, "That is out of line." The colloquy ensued:
[Ketchum's counsel]: Judge, motion to disregard that and I move for a mistrial right now, Judge.
The Court: Prosecutor's last comments and what was your motion?
[Ketchum's counsel]: Instruction to disregard and move for a mistrial.
[The Court]: Motion for mistrial is denied.. . . I have already instructed the jury to disregard that.
Ketchum maintains that the prosecutor's statement was a deliberate sidebar meant to inflame the minds of the jurors. The State concedes the comment was improper but counters that the instruction to disregard cured or rendered the error harmless.

A. Standard of Review
We review a trial court's decision to deny a mistrial under an abuse of discretion standard. Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App.2004); see Russeau v. State, 171 S.W.3d 871, 885 (Tex.Crim.App.2005). We must uphold the trial court's ruling if that ruling was within the zone of reasonable disagreement. Wead, 129 S.W.3d at 129; Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (en banc) (op. on reh'g). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." Hawkins v. State, 135 S.W.3d 72, 77 (Tex.Crim.App.2004) (en banc).
In reviewing the trial court's decision, we review the facts in the light most favorable to the trial court's ruling. Ex parte Peterson, 117 S.W.3d 804, 819 (Tex.Crim.App.2003) (per curiam). We "afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *600 Id. (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). Generally, whether the error was such that it could not have been cured by an instruction and whether the prosecutor acted in reckless disregard of such error are "essentially factual questions." State v. Lee, 15 S.W.3d 921, 926 (Tex.Crim.App.2000) (citing Bauder v. State, 921 S.W.2d 696, 700 (Tex. Crim.App.1996)). However, if the answers to these questions turn on the state of the law, we need not give deference to the trial court's ruling. Id. (citing Guzman, 955 S.W.2d at 87-89).

B. Applicable Law
A mistrial is an extreme remedy for prejudicial events occurring during the trial process. See Hawkins, 135 S.W.3d at 77. Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant may a motion for mistrial be granted. Id. at 79.
The request for an instruction that the jury disregard an objectionable occurrence is essential only when the such an instruction could have had the desired effect, which is to enable the continuation of the trial by a impartial jury. Young, 137 S.W.3d at 70. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. See Id. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal. Id. Faced with incurable harm, a defendant is entitled to a mistrial, and if denied one, will prevail on appeal. Id.

C. Application
By objecting and requesting an objection to disregard, Ketchum preserved error. See Tex.R.App. P. 33.1(a)(1)(A); Young, 137 S.W.3d at 70. The trial court properly sustained the objection to the statement. See Ex parte Peterson, 117 S.W.3d at 816-17 n. 55 ("Prosecutorial misconduct reasonably reaches only that conduct which is qualitatively more serious than simple error and connotes an intentional flouting of known rules or laws.").
The prosecutor improperly commented that she agreed with Ketchum's wife that "with him children would get hurt." Ketchum's wife did not make the statement and so the prosecutor had no statement with which to agree. Even so, the prosecutor's comment was not so inflammatory that any prejudicial effect could not be cured by the trial court's instruction to disregard.[9]See Young, 137 S.W.3d at 70. Because the instruction to disregard cured the error, we conclude that the trial court did not abuse its discretion in denying the motion for mistrial.
Even assuming error, we conclude that the record does not demonstrate harm. "Any other error, defect, irregularity, or variance" other than constitutional error, "that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). After reviewing the nature and extent of the evidence against Ketchum, including the trial court's instruction to disregard, we conclude that the instruction cured any prejudice flowing from the prosecutor's improper statement.
*601 We overrule Ketchum's fifth point of error.

VIII. CONCLUSION
Having overruled Ketchum's five points of error, we affirm the judgment.
NOTES
[1] Ketchum was originally charged with two counts of aggravated sexual assault of a child alleged to have occurred on or about June 25, 2004. On May 26, 2005, a superceding indictment was filed that contained the same two counts but added an enhancement paragraph alleging a 1987 felony sexual assault conviction. On August 18, 2005, a second superceding indictment changed the year of the offense from 2004 to 2003. In Count One of the latter superceding indictment, the instrument alleged that Ketchum intentionally or knowingly committed unlawful sexual contact with the victim C.M., a child under fourteen years of age and not his spouse. See Tex. Pen.Code. Ann. § 22.011(c)(1) (Vernon 2005). In Count Two, the same superceding indictment alleged that Ketchum committed aggravated sexual assault by digital penetration of the child's sexual organ. See Tex. Pen.Code. Ann. § 22.021(a)(1)(B)(iii) (Vernon 2005).
[2] A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." Prible v. State, 175 S.W.3d 724, 731 (Tex.Crim.App.2005).
[3] The original indictment alleged the incident occurred in 2004. The superceding indictment, upon which the State proceeded to trial, changed the year to 2003. See note 1.
[4] See Tex. Pen.Code Ann. § 46.02 (Vernon 2003); Christian v. State, 686 S.W.2d 930, 933-34 & n. 9 (Tex.Crim.App.1985) (en banc).
[5] An objection, request for an instruction to the jury, and motion for mistrial all seek judicial remedies of decreasing desirability for events of decreasing frequency. See Young v. State, 137 S.W.3d 65, 69 (Tex.Crim. App.2004) (en banc). The traditional and preferred procedure for a party to voice its complaint has been to seek them in sequence  that is, (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient. Id. However, this entire sequence is not essential to preserve complaints for appellate review. Id. The essential requirement is a timely, specific request that the trial court refuses. Id.
[6] We note that a proper jury charge instruction lessens any prejudice caused by the admission of extraneous offense evidence. Robinson v. State, 701 S.W.2d 895, 899 (Tex. Crim.App.1985) (en banc). In this case, the charge contained a limiting instruction. Ketchum did not object to the charge.
[7] The Texas Court of Criminal Appeals has stated:

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Robertson v. State, 187 S.W.3d 475, 482-83 (Tex.Crim.App.2006).
[8] In State v. Lee, 15 S.W.3d 921, 925 n. 3 (Tex.Crim.App.2000), the Texas Court of Criminal Appeals assumed, but did not decide for purposes of its analysis, that a comment made by the prosecutor in opening statement amounted to substantive evidence. The Court noted that in Griffin v. California, 380 U.S. 609, 613, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court considered the prosecutor's comments in closing arguments, and the trial court's acquiescence in such comments, to amount to evidence: "No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance." Because it is not necessary to our decision, we need not assume that the prosecutor's statement amounted to substantive evidence.
[9] We observe that the trial court stated it had already instructed the jury to disregard. Implicit in the trial court's statement is the instruction to the jury to disregard. See Tex. R.App. P. 33.1(a)(2)(A).