

**NUMBER 13-05-00756-CR**

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DIEGO GUERRERO,**                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

---

**On appeal from the 117th District Court of Nueces County, Texas.**

---

# MEMORANDUM OPINION[1]

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Diego Guerrero appeals his convictions of murder (Count I) and aggravated assault

(Counts II & III). TEX. PENAL CODE ANN. § 19.02 (Vernon 2003); § 22.02 (Vernon Supp.

2007). A jury found appellant guilty of all three counts and further found that he had used

---

[1]As this is a memorandum opinion and the parties are familiar with the facts and all issues of law presented by this case are well settled, we will not recite the facts or the law here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

a deadly weapon in each count. The jury assessed his punishment at imprisonment for a term of ninety-nine years on the murder count and a term of twenty years on each of the aggravated assault counts. By his sole issue, appellant complains that his trial counsel rendered ineffective assistance on five instances. We affirm.

## I. FACTUAL BACKGROUND

Guerrero's convictions stem from his involvement in an altercation between Ernesto Lopez, a social acquaintance of Guerrero, and Gabriel Lerma. On the evening of January 2, 2005, Ernesto and several friends were setting off fireworks in front of Ernesto's apartment, disturbing his neighbors, Elissa and Rudy Valdez, and their young children. According to Rudy's testimony, he and Elissa drove their children to Elissa's parents' house to get away from the noise. Later in the evening, Rudy drove back to his apartment with Lerma, Elissa's brother, and Richard Nieto, a friend. Rudy testified that he entered his apartment, but he exited when he heard Lerma and Ernesto arguing. Rudy approached the arguing individuals.

While Lerma and Ernesto were arguing, Guerrero appeared in Ernesto's front doorway. Rudy testified that Ernesto exclaimed, "shoot him," in Spanish. Rudy saw Guerrero shoot his left knee, which knocked Rudy to the ground. After Guerrero fired at Rudy, Lerma ran toward Rudy's car. Rudy testified that Guerrero fired shots toward the car. He also testified that while he was on the ground, Benito Lopez, Ernesto's nephew, emerged from Ernesto's apartment with a shotgun and began firing at Rudy and in the direction of Rudy's car.

Nieto's testimony echoed Rudy's recollection of the altercation and shooting. Nieto also testified that Guerrero tried shooting at him but missed.

2

Benito testified that, looking out from inside Ernesto's apartment, he saw Lerma and Ernesto arguing. Guerrero was on the front porch and was the only armed individual at the scene. Benito thought that Lerma and Ernesto were about to have a fist fight because they were pumping their fists. Suddenly, according to Benito, Guerrero started shooting at Rudy and Lerma. Benito feared that Rudy and Lerma, although unarmed, were rushing the house. Benito then exited the house with a shotgun and fired at the ground in front of the house and towards the car. Benito testified that by the time he got outside both Rudy and Lerma were already on the ground.

Guerrero testified that he witnessed Ernesto, Lerma, and Rudy arguing and that all of a sudden he heard gunshots. When Guerrero heard gunshots, he ran into a car and fled the scene with several other individuals.

When police arrived at the scene, Lerma was found lying on the ground near Rudy's car. He did not have a pulse and was not breathing. Emergency medical treatment was administered to no avail. Officer Starla Wyatt testified that numerous .45 bullet casings and 20 gauge shotgun shells were recovered from the scene. Ray Fernandez, M.D., the Nueces County Medical Examiner, gave expert medical testimony. Fernandez testified that Lerma died from a single gunshot to the chest, which produced entrance and exit wounds. Due to the nature of the wounds, Fernandez could not definitively conclude whether the wounds were caused by a .45 caliber bullet or a shotgun slug.

## II. PROCEDURAL BACKGROUND

The jury convicted Guerrero of one count of murder and two counts of aggravated assault. He received a ninety-nine-year prison sentence for the murder conviction and two twenty-year sentences for the aggravated assaults. Guerrero filed a motion for new trial,

which stated, in pertinent part:

> That the Defendant is proceeding under Rule 21.3(a) of the Texas Rules of Appellate Procedure in that Defendant's rights were injured by his trial counsel's failure to fully communicate with Defendant and to follow Defendant's instructions as to Defendant's trial plan.

Guerrero's appellate counsel averred to the motion that he had "read the attached motion and all of the facts and allegations contained in said motion are true and correct." The trial court conducted a hearing on Guerrero's motion for new trial over the State's objections.[2]

At the hearing, Maria Garcia, Guerrero's mother, testified that Guerrero had mental problems and received supplemental security income in 1998. Copies of a benefits letter and check were admitted as exhibits. Naomi Guerrero, Guerrero's cousin, testified that, she briefly encountered Rudy after the shooting at an educational center, and that he stated to her, "I know for a fact that Diego [Guerrero] isn't the one who shot me." Guerrero was the final witness at the hearing. He testified that his trial counsel was tired when they would meet and would not listen to his suggestions of possible witnesses. Guerrero suggested that his trial counsel call Rebecca Stutts, a deputy sheriff, and a ballistics expert, to testify, but those suggestions were ignored.

The trial court overruled Guerrero's motion and this appeal ensued.

### III. DISCUSSION

On appeal, Guerrero argues that his trial counsel was ineffective for: (1) failing to subpoena Naomi Guerrero; (2) failing to subpoena Rebecca Stutts; (3) failing to subpoena witnesses to explain his mental and emotional condition; (4) presenting character evidence

---

[2] At the outset of the hearing, the State argued that Guerrero's motion and his appellate counsel's affidavit were conclusory, self-serving, and failed to meet the minimum requirements to allow an evidentiary hearing to go forward.

4

which supposedly opened the door to Guerrero's criminal history; and (5) failing to conduct an independent investigation of the facts.

## A.    Standard of Review

In order to prove an ineffective assistance of counsel claim, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and, but for his counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992).  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

## B.    Failure to Subpoena Certain Witnesses

In his first three arguments, Guerrero contends that his trial counsel was ineffective because he did not subpoena crucial witnesses.  He argues that Naomi's conversation with Rudy, if presented as testimony, would have undermined Rudy's testimony regarding his identification of Guerrero as the shooter.  Guerrero also argues that calling Stutts as a witness to testify about his appearance would have improved his case because Stutts was a sheriff's deputy and, thus, a respected member of the community.  Guerrero's third witness argument is that there was not enough testimony regarding his mental state.  We disagree with all three of Guerrero's witness arguments.

5

A claim of ineffective assistance of counsel may not be predicated upon a failure to call witnesses unless appellant shows such witnesses were available and their testimony would benefit the appellant. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim.App.1983). Additionally, proffered evidence must be more than cumulative of other evidence at trial to raise the spectre of ineffective assistance. *Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988); *Ketchum v. State,* 199 S.W.3d 581, 597 (Tex. App.–Corpus Christi 2006, pet. ref'd).

Regarding Naomi's testimony, the State argues Guerrero presented several friendly witnesses to testify regarding his character and that his trial counsel could have concluded that another self-serving witness was not warranted. We agree. Guerrero's trial counsel called, among others: (1) Luisa Garcia, Guerrero's mother; (2) May Castellano, Guerrero's girlfriend; (3) Laura Perez, a family friend; (4) Cruz Reyna, a friend; and (5) Tomas Ramon, Guerrero's brother. Additionally, Guerrero took the stand and testified that he was not the shooter. Guerrero's family and friends gave self-serving testimony about Guerrero's character. The trial counsel could have reasonably calculated that Naomi's testimony about her conversation with Rudy could have been too self-serving, in light of the other testimony. The attorney could have also concluded that Naomi's testimony would not have appeared credible.

Guerrero's argument that Stutts's testimony would have strengthened his defense because she was a public servant and credible to the jury fails because it would have been cumulative testimony. Under *Holland*, proffered testimony must be more than cumulative of other testimony at trial. *Holland*, 761 S.W.2d at 319. Guerrero suggested to his trial attorney that Stutts give testimony about his appearance. Castellano, however, testified

about Guerrero's appearance.

The third argument, regarding trial counsel's failure to present mental health witnesses, fails because Guerrero has not shown that there were any mental health witnesses available to give testimony that would benefit his defense. At the hearing on the motion for new trial, Guerrero did not present any testimony from mental health professionals regarding his condition. Moreover, the proffered mental health evidence was Guerrero's mother's testimony about his hyperactivity as a child and eligibility for disability payments. We note that at the punishment phase of trial Guerrero's mother testified that he was hyper, disabled, and immature. Therefore, Guerrero's mother's testimony would have been cumulative, and so the attorney could have reasonably determined that such testimony was unnecessary.

## C.     Opening the Door to Guerrero's Criminal History

In addition to his witness arguments, Guerrero complains that his trial counsel was ineffective because he opened the door to Guerrero's criminal history during the guilt/innocence phase of trial. Guerrero's prior criminal history was elicited from Perez's testimony. On cross-examination, the State asked why Perez had come to testify for Guerrero, and she volunteered, "Well, I know Diego, and I know him to be compassionate and kind." The State continued by asking her what caused her to come to court, Perez said, "To testify in – on his character, on his good behavior." The State then asked if Perez had ever known Guerrero to lie to the police about the identity of his friends, and Perez answered that she had never known him to lie.

On redirect examination, Guerrero's trial counsel asked Perez if Guerrero had a "mean streak." Perez testified that she did not think Guerrero was capable of hurting

7

anyone. Contending that Guerrero's attorney had opened the door to extraneous offenses, the prosecutor then further cross-examined Perez about Guerrero's prior convictions for theft and burglary of a vehicle. On further redirect, Guerrero's attorney asked Perez if she knew "Diego to be capable of shooting or killing someone?" Perez responded, "No, not the Diego that I know."

Given the situation at trial, Guerrero has not shown how his trial counsel's actions were unreasonable. Perez volunteered character testimony on cross-examination. The State pushed the character testimony envelope by asking Perez if Guerrero had ever lied to the police. The questions of Guerrero's trial counsel may have been calculated at pushing the envelope back and getting positive testimony in the record, in light of the insinuations made by the State in its questions to Perez. Guerrero's trial counsel could have strategically decided that the benefits of offering good character testimony outweighed the consequences of admitting testimony regarding non-violent offenses.

### D. Trial Counsel's Duty to Investigate

Guerrero's final argument is that his trial counsel failed to conduct an independent investigation of the facts. He specifically points to the fact that Perez was called by Guerrero's trial counsel to testify but that the trial counsel had not meet with her before trial. Guerrero also alleges that his trial counsel's failure to subpoena the witnesses mentioned in his first three arguments evidences an inadequate investigation. We disagree.

A criminal defense lawyer has a duty to make an independent investigation of the facts of a case, which includes seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App.1990). A breach of the duty to investigate

8

may result in a finding of ineffective assistance "where the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In defining the duty to investigate, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

The record shows that Guerrero's trial counsel met him on a number of occasions and informed him of the status of his investigation and defensive strategy. Perez's sons were friends with Guerrero. She testified about Guerrero's appearance, taste in clothing, and character. Guerrero has not shown that his trial counsel's investigation was unreasonable because he has not developed a record of what information his trial counsel would have discovered by further investigation. Without more evidence, we cannot second-guess the trial counsel's resource allocation decisions.

## IV. CONCLUSION

We overrule Guerrero's sole issue and affirm the trial court's judgment.

ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 13th day of March, 2008.

9