

NUMBER 13-08-00174-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SAUL MIRAMONTES SOTO,                                    Appellant,

v.

THE STATE OF TEXAS,                                           Appellee.

**On appeal from the 370th District Court of
Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Saul Miramontes Soto, guilty of three counts of aggravated

sexual assault of a child, a first-degree felony, and one count of indecency with a child by

contact, a second-degree felony.  *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i),

(a)(1)(B)(iii), (a)(2)(B); 21.11(a)(1) (Vernon Supp. 2009).  Each offense was enhanced by

a prior felony conviction, and the jury assessed punishment at seventy years' imprisonment

and a $10,000 fine on each count of aggravated sexual assault of a child and fifty years'

imprisonment and a $10,000 fine for the offense of indecency with a child by contact, to be served concurrently. *See id.* §§ 12.32, 12.33, 12.42 (Vernon Supp. 2009). By six issues, Soto contends (1) the evidence is insufficient to support his conviction for aggravated sexual assault of a child as alleged in count three; (2) counts one, two, and four violate the constitutional prohibition against double jeopardy; and (3) the trial court submitted an erroneous jury charge at the guilt/innocence stage of trial. We affirm as modified.

## I. BACKGROUND

### A. M.G.'s Testimony

Thirteen-year-old M.G. testified that the offenses at issue occurred in the back of a Jeep on the morning of July 7, 2007.[1] On July 6, 2007, M.G.'s father gave her permission to spend the night with her fifteen-year-old friend, J.P., at J.P.'s home in Mission, Texas. Late that night, J.P. received a telephone call from her seventeen-year-old ex-boyfriend, J.H. J.H. invited J.P. to go to South Padre Island with him, but J.P. refused. M.G., wanting to go to McAllen to visit her brother, I.G., asked J.P. if J.H. would drive her there. J.H. agreed, and around 12:00 a.m. or 1:00 a.m., he arrived to pick up M.G. J.H. was driving a white Jeep and a man, later identified as Soto, was sitting in the front passenger seat. Soto moved to the backseat, and M.G. climbed into the front passenger seat.

M.G. testified that this was the first time she had ever met Soto and that he appeared "old," "big," and "smelled like alcohol."[2] Although M.G. thought that J.H. would take her directly to I.G.'s apartment, he drove to a convenience store, where Soto bought

---

[1] M.G. was thirteen years old at the time of the alleged offenses; "M.G." is a pseudonym to protect her identity.

[2] Additional testimony revealed that Soto was twenty-six years old.

2

cigarettes; the trio then "went cruising around." M.G. testified that she "felt scared" because J.H. was not driving to I.G.'s apartment. M.G. told J.H. and Soto that she wanted to go to I.G.'s apartment, but Soto responded, "Get the fuck out of here. We are going to the island."

M.G. testified that J.H. drove to a green and blue house in Weslaco because he and Soto wanted to pick up a green Mustang.[3] After arriving at the house, M.G. told J.H. that if he did not take her to I.G.'s home, I.G. would call the police.[4] M.G. testified that Soto told her he was not going to take her home until he could "touch" her. Soto told J.H. to get out of the Jeep. J.H. complied and sat on a white picnic table outside of the green and blue house. M.G. and Soto moved to the back of the Jeep, in the area behind the backseat. M.G. testified that Soto took off his pants, pulled down his boxers, and told her to remove her pants and underwear.

M.G. testified that Soto touched her breasts underneath her clothes. M.G. refused to kiss Soto or touch his "thing." M.G. identified her "thing" as her vagina and Soto's "thing" as his penis. M.G. testified that Soto moved his hand "front and back" on his "thing." M.G. laid back and Soto got on top of her and attempted to "put his thing inside [her] thing." M.G. stated that Soto's "thing" was "hard" and that Soto's "thing" touched her "thing" and "kind of" went inside. M.G. also testified that Soto "put[ ] his fingers inside [her] thing." M.G. stated that it "hurt" when Soto's "thing" and fingers touched her "thing" and that she tried pushing him away. M.G. testified that the encounter lasted ten to fifteen minutes.

After it ended, M.G. and Soto dressed, and Soto called J.H. back to the Jeep. When J.H. returned, M.G. called I.G. from J.H.'s phone and J.H. told I.G. that he and Soto

---

[3] Later testimony revealed that the house was possibly located in Edinburg.

[4] M.G. had telephoned I.G. several times that night to let him know that she was going to his apartment.

3

would drop M.G. off at the HEB grocery store in San Juan.

**B.    I.G.'s Testimony**

I.G. testified that at approximately 6:00 a.m. on July 7, 2007, he and two friends arrived at the San Juan HEB. I.G. saw M.G. standing in the parking lot; I.G. testified that M.G. looked "nervous or scared." I.G. told M.G. to get inside his vehicle, and asked, "Where are the guys?" M.G. pointed to a white Jeep parked a few spaces away. I.G. grabbed a stick and began hitting the Jeep. The Jeep drove away. I.G. jumped into his vehicle and followed the Jeep as he called the police. The Jeep ran out of gas and stopped under a nearby expressway. J.H. and Soto jumped out of the Jeep and ran to a nearby recreational vehicle park. I.G. and his friends pursued J.H. and Soto on foot until police arrived and apprehended J.H. and Soto for public intoxication.

I.G. testified that he and M.G. were taken to the Pharr police station and questioned. At the station, M.G. told I.G. and the police that she had been sexually assaulted in the Jeep.

**C.    Additional Testimony**

Hidalgo County Sheriff's Investigator Raul Cantu testified that M.G. and I.G. were brought to his office around 11:00 a.m. or 11:30 a.m. on July 7, 2007. Cantu took M.G.'s statement and testified that M.G. told him that Soto had used his fingers to penetrate her. Investigator Cantu referred M.G. to the McAllen Medical Center for collection of evidence of sexual assault.

Lorenza Guerrero, a sexual assault nurse examiner, testified that she conducted an examination of M.G. around 5:00 p.m. on July 7, 2007. Guerrero testified that M.G. told her that the alleged assault had occurred around 5:00 a.m. that same day. Guerrero's examination revealed that M.G. was not fully physically developed and that redness

4

extended from M.G.'s vaginal area to her anus. Guerrero testified that although there was no trauma to M.G.'s hymen, it was possible that a penis could have entered M.G.'s vaginal area without causing trauma. Guerrero stated that M.G. tested positive for Chlamydia, a sexually transmitted disease.

Alejandro Madrigal, Jr., a forensic scientist with the Texas Department of Public Safety Crime Lab in McAllen, testified that vaginal and anal swabs obtained from M.G. contained a mixture of M.G.'s DNA and the DNA of an unknown person. Madrigal testified that testing revealed that Soto could not be excluded as a contributor to the foreign DNA found in the swabs. Madrigal further testified that the statistics from the anal swab revealed, to a reasonable degree of scientific certainty, that Soto was the source of the foreign DNA.

After the State rested, no witnesses were called by the defense. The jury found Soto guilty of aggravated sexual assault of a child by causing his sexual organ to contact M.G.'s sexual organ (count one), aggravated sexual assault of a child by causing his sexual organ to penetrate M.G.'s sexual organ (count two), aggravated sexual assault of a child by causing his finger to penetrate M.G.'s sexual organ (count three), and indecency with a child by contact by having sexual contact with M.G.'s sexual organ (count four). The jury assessed punishment at seventy years' imprisonment and a $10,000 fine on each count of aggravated sexual assault of a child and fifty years' imprisonment and a $10,000 fine for the offense of indecency with a child by contact, to be served concurrently. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

In his second and third issues, Soto contends that the evidence is legally and factually insufficient to support his conviction for sexual assault of a child by causing his

finger to penetrate the sexual organ of M.G.

## A. Standards of Review and Applicable Law

In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). A jury's verdict will be upheld "unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In conducting a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or the jury's verdict is against the great weight and preponderance of the evidence. *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (citing *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006)). We will not reverse the jury's verdict unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417. Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Curry*, 30 S.W.3d at 404; *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

6

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child younger than fourteen years of age by any means. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i). Penetration may be proved by circumstantial evidence, and there is no requirement that the child victim be able to testify as to penetration. *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.–Dallas 1994, no pet.) (citing *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). Moreover, the slightest penetration is sufficient to uphold a conviction if it is proven beyond a reasonable doubt. *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976). Intent can be inferred from the acts, words, and conduct of the accused. *DeLeon v. State*, 77 S.W.3d 300, 312 (Tex. App.–Austin 2001, pet. ref'd) (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982)).

## B. Analysis

Soto argues that the evidence is insufficient to support his conviction because M.G. did not reveal, either during her sexual assault examination at McAllen Medical Center or during a later interview at a child advocacy center, that Soto used his finger to penetrate her sexual organ. Additionally, Soto argues that there is no physical evidence to support his conviction.

At trial, M.G. identified Soto's "thing" as his penis, and her "thing" as her vagina. M.G. then testified during direct examination as follows:

Q. [State]    And besides his thing going inside your thing, did anything else happen? Did he do anything else to you?

A. [M.G.]    Well, he was fingering—he was fingering me.

Q.    And what do you mean by "fingering" you?

7

> A.    Well, he was putting his fingers inside my thing.

M.G. provided similar testimony during cross-examination:

> Q. [Defense Counsel]    Something happened in the back of that car or the Jeep for 10 to 15 minutes. What was it that happened? What happened?
>
> . . . .
>
> A. [M.G.]    Well, for 10 to 15 minutes. Well, he was just trying to—putting his fingers inside my thing, grabbing his thing, putting—trying to put his thing inside my thing.

The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.–Corpus Christi 2008, no pet.); *Ketchum v. State*, 199 S.W.3d 581, 590 (Tex. App.–Corpus Christi 2006, pet. ref'd). Wide latitude is given to the testimony of a child victim of sexual abuse. *Soto*, 267 S.W.2d at 332. "The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult." *Id.*

The jury is responsible for judging the credibility of the witnesses, and it is free to believe or disbelieve any portion of a witness's testimony. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); *Ortega v. State*, 207 S.W.3d 911, 920 (Tex. App.–Corpus Christi 2006, no pet.). After reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Soto caused his finger to penetrate M.G.'s sexual organ. *See Hooper*, 214 S.W.3d at 13; *see also Gomez v. State*, No. 13-08-00157-CR, 2009 WL 2914262, at *5 (Tex. App.–Corpus Christi Aug. 31, 2009, no pet. h.) (mem. op., not designated for

8

publication) (concluding that evidence was legally sufficient to support appellant's conviction of aggravated assault of a child where child victim testified that appellant touched her on the "outside" of her sexual organ and later testified that appellant touched "inside" her sexual organ). Furthermore, viewing the evidence in a neutral light, we conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust and that the jury's verdict is not against the great weight and preponderance of the evidence. *See Grotti*, 273 S.W.3d at 283; *see also Gomez*, 2009 WL 2914262, at *5. Accordingly, we conclude that the evidence is factually sufficient to support Soto's conviction. Soto's second and third issues are overruled.

### III. DOUBLE JEOPARDY

In his first issue, Soto contends that counts one, two, and four violate the constitutional prohibition against double jeopardy. Specifically, Soto argues that count one (aggravated sexual assault of a child by causing his sexual organ to contact M.G.'s sexual organ) and count four (indecency with a child by contact by having sexual contact with M.G.'s sexual organ) are lesser included offenses of count two (aggravated sexual assault of a child by causing his sexual organ to penetrate M.G.'s sexual organ) because all three counts arise from the same criminal episode. Although the State disagrees with Soto's "criminal episode" argument, the State concedes that there was a double jeopardy violation and that Soto's convictions on count one and four are subsumed into counts two and three, respectively.

#### A. Preservation

Soto failed to raise any double jeopardy objections at trial; however, a double jeopardy claim may be raised for the first time on appeal when the undisputed facts show that a double jeopardy violation is clearly apparent on the face of the record and when

9

enforcement of the usual rules of procedural default serve no legitimate state interest. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). In the present case, Soto was tried on three counts of aggravated sexual assault and one count of indecency with a child in the same proceeding. Therefore, the trial court knew or should have known of a potential double jeopardy violation. *Saldana v. State*, 287 S.W.3d 43, 56-57 (Tex. App.–Corpus Christi 2008, pet. ref'd). Moreover, no legitimate state interest will be served by enforcement of the usual rules of procedural default because even if we find that a double jeopardy violation occurred, a retrial will not be required. *Id.* (noting that if court concluded that defendant received multiple convictions for the same offense, the "conviction would merely be reformed to delete the duplicated punishment"). We therefore review the record to determine if a double jeopardy violation occurred.

**B.    Analysis**

The Double Jeopardy Clause of the United States Constitution protects against multiple punishments for the same offense. *See* U.S. CONST. amend. V; *Brown v. Ohio*, 432 U.S. 161, 164 (1977); *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008). In order to prevail on a double jeopardy claim, the record must demonstrate that the offenses at issue necessarily arose from "one act which could be subject to two different interpretations." *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). "Even when two acts are committed in close temporal proximity, the acts still may be separate and distinct for double jeopardy purposes." *Soto*, 267 S.W.3d at 343.

Under section 22.021 of the Texas Penal Code, a person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the sexual organ of a child by any means, or causes the sexual organ of a child to contact or penetrate the sexual organ of another person, including himself. *See* TEX. PENAL CODE

10

ANN. § 22.021(a)(1)(B)(i), (a)(1)(B)(iii). Generally, each allegation under section 22.021 constitutes a separate offense. *See Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). However, "[s]exual contact or exposure that occurs in the course of an act of sexual penetration is subsumed in the completed act." *Soto*, 267 S.W.3d at 343 (citing *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004)). Therefore, "[a] conviction for both the act of penetration and for the sexual contact or exposure incident to the penetration constitutes double jeopardy." *Id.*

In the present case, the jury convicted Soto of two separate offenses of aggravated assault of a child by penetration: (1) causing his sexual organ to penetrate M.G.'s sexual organ (count two); and (2) causing his finger to penetrate M.G.'s sexual organ (count three). Although these offenses occurred on the same occasion, Soto's penetration of M.G.'s sexual organ with his penis was a separate and distinct act from using his finger to penetrate M.G.'s sexual organ. *See Bottenfield v. State*, 77 S.W.3d 349, 358 (Tex. App.–Waco 2002, pet. ref'd) (holding that touching victim's sexual organ with finger was separate and distinct from contacting her sexual organ with his penis, even when committed during the same occurrence). Additionally, the jury convicted Soto of two acts of contact: (1) aggravated assault of a child by causing his sexual organ to contact M.G.'s sexual organ (count one); and (2) indecency with a child by contact (count four). The record demonstrates that the acts of penetration were based on the same conduct as the acts of contact. M.G. testified that while in the back of the white Jeep, Soto got on top of her and attempted to "put his thing inside [her] thing." She also testified that Soto "put[ ] his fingers inside [her] thing." Because a conviction for both the completed act of penetration and for sexual contact incident to the penetration constitutes double jeopardy, we hold that Soto was punished four times for two separate offenses. *See Saldana*, 287

11

S.W.3d at 58. We sustain Soto's first issue and delete the convictions on counts one and four. *See id.*

## IV. CHARGE ERROR

In issues four, five, and six, Soto contends that the trial court submitted an erroneous jury charge at the guilt/innocence stage of trial. Specifically, Soto contends that the trial court commented on the weight of the evidence by attaching a "punishment" verdict form to count one. The State contends that the proper charge was submitted to the jury and the punishment verdict form was merely misplaced in the clerk's record.

The clerk's record contains separate guilt/innocence and punishment charges that were submitted to the jury. Count one's guilt/innocence charge is followed by the "Forms of Verdict" page, which provides:

> We, the Jury, find the Defendant, SAUL MIRAMONTES SOTO, GUILTY of the offense of AGGRAVATED SEXUAL ASSAULT OF A CHILD as charged in the indictment.
>
> /signed/
> PRESIDING JUROR

OR

> We, the Jury find the Defendant, SAUL MIRAMONTES SOTO, NOT GUILTY.

The next page is a verdict form for the punishment phase entitled "Verdict Form No. 2." The court's charge for the punishment phase appears later in the record and is immediately followed by a page entitled "Verdict Form No. One." The punishment charge for count one is missing Verdict Form No. 2. Review of the reporter's record reveals that after reading count one's guilt/innocence charge to the jury, the trial court read only from the page entitled "Forms of Verdict" before continuing on to count two of the charge.

12

We conclude that although the punishment verdict form is misplaced in the clerk's record, a review of the entire record reveals that the trial court did not submit an erroneous charge to the jury. Moreover, "[t]o the extent that the form of the verdict may have constituted a comment on the weight of the evidence . . . a failure to object to an alleged comment on the weight of the evidence also waives any review of the alleged error." *Contreras v. State*, 54 S.W.3d 898, 906 (Tex. App.–Corpus Christi, no pet.). Here, Soto did not object to the charge on this basis. Accordingly, Soto's fourth, fifth, and sixth issues are overruled.

## V. CONCLUSION

Because we conclude that the convictions under counts one and four violate the Double Jeopardy Clause of the Fifth Amendment, we vacate the convictions on counts one and four of the indictment and modify the trial court's judgment of conviction to reflect our decision. *See* TEX. R. APP. P. 43.2(b). We affirm as modified.

_____
ROGELIO VALDEZ
Chief Justice

Do Not Publish. TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and filed
this the 22nd day of October, 2009.